**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **NEONATAL PRODUCT GROUP, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 13-CV-2601-DDC-KGS** |
| **JANICE M. SHIELDS and** **PAUL W. SHIELDS,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

This is a patent case. Defendants believe plaintiff makes and sells two products that infringe on defendants' patent. Plaintiff seeks a declaratory judgment from this Court that it is not infringing on defendants' patent and that defendants' patent is invalid. In addition, plaintiff brings claims against defendant Janice M. Shields, individually, for false advertising and tortious interference with a business relationship. Defendants filed this Motion to Dismiss (Doc. 15). For the following reasons, the Court grants in part and denies in part defendants' motion.

### I.  Factual Background

The following facts are taken from plaintiff's Complaint and viewed in the light most favorable to it. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

Plaintiff Neonatal Product Group, doing business as Creche Innovations ("Creche"), makes and sells products used to care for newborn infants in hospital neonatal units. Defendants Janice M. Shields and Paul W. Shields invented and obtained U.S. Patent No. 6,417,498 on a device called the "Neonatal Substrate Warmer" (the '498 Patent). In June 2006, defendants granted plaintiff an exclusive 20-year license to use the '498 Patent, in exchange for quarterly

1

royalty payments.  The License Agreement provided that it was made under the laws of Kansas, that it was performable in part in Johnson County, Kansas, and that the parties mutually agreed that personal jurisdiction and venue were proper in Kansas state and federal courts.  Plaintiff has its principal place of business in Kansas, and defendants are citizens of California.

At the time the parties signed the License Agreement, they both believed that two of plaintiff's products, PENGUIN® milk-warming machines and THERMA-LINER™ bags, used the '498 Patent.  For over six years, from June 2006 through the end of 2012, plaintiff paid a percentage of its revenues from sales of the two products to defendants.  In early 2013, however, plaintiff determined that the '498 Patent did not actually cover its Penguin machines and Therma-Liner bags.  As a result, plaintiff stopped making payments under the License Agreement.

Plaintiff's decision to stop paying royalties sparked a dispute between the parties. Defendants demanded payment, and both sides accused the other of breaching the License Agreement.  On May 29, 2013, defendants terminated the License Agreement, but continued to demand past due royalty payments and to assert that plaintiff's products used the '498 Patent. The parties continued informal discussions to resolve the dispute, and, on September 27, 2013, they entered into a Letter of Intent.  Under the Letter of Intent, plaintiff agreed to pay the past due royalties under the License Agreement, and the parties agreed to negotiate in good faith for a new license agreement.

The subsequent negotiations were unsuccessful.  On November 15, 2013, defendant Janice Shields e-mailed Scott Norman, President of plaintiff Creche, that "we are finished." (Doc. 22-25 at 1)  Ms. Shields continued:  "You will learn that stealing someone's patent will not pay.  I am betting you are playing games to keep me at bay until you in some way steal my

patent.  You will want to make sure it does not violate any of the claims of my '498 patent."

(Doc. 22-25 at 2)  Less than a week later, on November 20, 2013, Ms. Shields sent the following

e-mail to a supplier of plaintiff's Therma-Liner bags:

> I wanted to warn you that there will more than likely be a 'Cease and Desist'
> letter to you from my lawyers to not supply bags to Creche.  [Creche is] still
> selling my warmer and refusing to pay me royalties on it.  That means all
> suppliers will have to stop selling to Creche until the case is a[d]judicated.
> ***
> I will be making the bags and selling them too.  I have the only patent on the bags
> you supply.
> ***
> Creche is most obviously using my patent, and they will not win in court.

(Doc. 1-5 at 2).

Plaintiff filed this lawsuit on November 25, 2013, seeking a declaration that its Penguin

machines and Therma-Liner bags do not infringe on the '498 Patent and that the '498 Patent is

invalid.  Plaintiff also asserted claims of false advertising and tortious interference against Ms.

Shields individually.  Defendants filed this motion to dismiss, arguing that:  (1) there is no actual

controversy between the parties sufficient for the Court to decide plaintiff's declaratory claims;

(2) the Court lacks personal jurisdiction over defendants; and (3) plaintiff failed to plead all four

of its claims sufficiently.

## II.  Declaratory Claims

Counts I and II of plaintiff's Complaint seek a declaratory judgment that (I) plaintiff has

not infringed on the '498 Patent (noninfringement) and (II) the '498 Patent is invalid because it

does not meet the conditions of patentability (invalidity).

### A. An "Actual Controversy" Exists Sufficient for the Court to Decide Plaintiff's Declaratory Claims

Defendants first argue that the Court lacks jurisdiction over plaintiff's declaratory judgment claims because plaintiff has not alleged an "actual controversy" as the Declaratory Judgment Act requires. The Declaratory Judgment Act provides:

> *In a case of actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added).

In the normal case, this Court applies Tenth Circuit law to determine whether a plaintiff has sufficiently alleged an "actual controversy." However, "[w]hether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *Ass'n for Molecular Pathology v. U.S. Patent and Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *rev'd in part by Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013). As a result, the Court applies Federal Circuit law to evaluate whether this case presents an "actual controversy."

The "actual controversy" requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution, which provides for federal jurisdiction over only "cases and controversies." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007). The party seeking to establish declaratory judgment jurisdiction bears the burden of demonstrating that an Article III case or controversy exists when it filed the claim for declaratory relief. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012).

Defendants mistakenly argue that plaintiff has not satisfied the "actual controversy" requirement because it has not shown that defendants "threatened it with a patent infringement suit, or that it has a reasonable apprehension of an infringement suit." (Doc. 16 at 9) The Supreme Court rejected the "reasonable apprehension of suit" test over seven years ago. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007) (holding that the Federal Circuit's "reasonable apprehension of suit" test conflicts with Supreme Court precedent). Instead, *MedImmune* instructs courts to analyze "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.

Here, plaintiff has sufficiently alleged an Article III case or controversy that gives rise to jurisdiction over plaintiff's declaratory claims. First, there is a "substantial controversy" of "sufficient . . . reality." *Id.* Plaintiff and defendants have been in a dispute since January 2013, when plaintiff determined that its Penguin machines and Therma-Liner bags did not use the '498 Patent and stopped making royalty payments under the License Agreement. Defendants eventually terminated the License Agreement, while continuing to maintain that plaintiff owed them royalties and was infringing on the '498 Patent. The parties eventually agreed to a Letter of Intent, and plaintiff made disputed royalty payments to defendants. However, negotiations over a new license agreement broke down. On November 15, 2013, Ms. Shields ended negotiations, e-mailing Scott Norman, President of plaintiff Creche, "[W]e are finished." (Doc. 22-25 at 1) Ms. Shields continued: "You will learn that stealing someone's patent will not pay. I am betting you are playing games to keep me at bay until you in some way steal my patent. You will want to make sure it does not violate any of the claims of my '498 Patent." (Doc. 22-25 at 2) Plaintiff

continues to claim the right to sell its Penguin machines and Therma-Liner bags without a license from defendants. Thus, the parties have a substantial and real controversy over whether plaintiff's Penguin machines and Therma-Liner bags infringe on the '498 Patent.

The dispute is also sufficiently immediate. *MedImmune*, 549 U.S. at 127. On November 20, 2013, Ms. Shields sent an e-mail attempting to convince one of plaintiff's suppliers to stop selling to plaintiff. (Doc. 1-5 at 2) Ms. Shields wrote, "I have the only patent on the bags you supply" and "all suppliers will have to stop selling to Creche until the case is a[d]judicated." (Doc. 1-5 at 2) Just five days later, on November 25, 2013, plaintiff filed this lawsuit. If a supplier decided to stop doing business with plaintiff over questions about the '498 Patent, it would directly and negatively affect plaintiff's business. Therefore, Ms. Shields' e-mail renders this dispute sufficiently immediate.

Plaintiff has alleged "a substantial controversy . . . of sufficient immediacy and reality" to satisfy the "actual controversy" requirement of Article III and the Declaratory Judgment Act. *MedImmune*, 549 U.S. at 127. The Court denies defendants' motion to dismiss plaintiff's declaratory claims for lack of an "actual controversy."

### B. Janice M. Shields and Paul W. Shields, as Trustees of the Shields Family Trust, Are Proper Defendants for Claims Against the Trust

In 2010, defendants assigned the '498 Patent to the Shields Family Trust. Defendants are the sole trustees of the Trust, as well as its only trustors and beneficiaries. Nevertheless, defendants assert that because "the owner of the patent at issue, the Shields Family Trust, never asserted its patent rights or threatened any adverse action against the Plaintiff," there is no "actual controversy" between the plaintiff and the patent owner. (Doc. 25 at 6)

The Court cannot see how a trust can "assert patent rights" or "threaten adverse action" except through its trustees. Kansas law provides that "[a] trustee shall take reasonable steps to

6

enforce claims of the trust and to defend claims against the trust." K.S.A. § 58a-811. In this case, a trustee—Ms. Shields—has taken many steps to enforce the '498 Patent owned by the Trust. Since plaintiff stopped making royalty payments under the License Agreement, Ms. Shields has, among other things: sent numerous e-mails to plaintiff seeking royalty payments; negotiated for a new license agreement; threatened litigation against plaintiff; and e-mailed one of plaintiff's suppliers to assert alleged patent rights.

In spite of this concerted action by Ms. Shields, defendants argue that because she "never represented that she was acting on behalf of the Trust, . . . it cannot be said that the Trust asserted its patent rights." (Doc. 25 at 7) In other words, defendants assert that because Ms. Shields never explicitly announced that she was acting for the Trust in her discussions with plaintiff and others about the '498 Patent, the Trust never asserted its patent rights.

The Court rejects defendants' hypertechnical argument. First, defendants provide no law in support of their proposed rule. Moreover, any reasonable person in plaintiff's position would have known that Ms. Shields—a trustee *and* beneficiary of the Trust—was acting on behalf of the Trust to defend the '498 Patent. There is no requirement that a trustee explicitly state as much. As a result, the Court concludes that plaintiff properly named Janice M. Shields and Paul W. Shields as defendants to their declaratory claims.[1]

### III. Personal Jurisdiction

Defendants next argue that the Court lacks personal jurisdiction over them in this lawsuit.

---

[1] The trustees of a trust, not the trust itself, are the proper defendants in a suit against a trust. *E.g.*, *Coverdell v. Mid-South Farm Equip. Ass'n, Inc.*, 335 F.2d 9, 13 (6th Cir. 1964) (holding "the trustees would have been the proper parties defendant in the instant case rather than the trust."); *Colo. Springs Cablevision, Inc. v. Lively*, 579 F. Supp. 252, 254 (D. Colo. 1984) (holding "Walter Lively as the trustee of the Lively Family Trust is the properly named defendant in this lawsuit."); *Nicholson v. Fazeli*, 113 Cal. App. 4th 1091, 1102 (Cal. App. 2003) ("[T]he trustee, rather than the trust, is the real party in interest in litigation involving trust property.").

## A.  Choice of Law

The Court must first decide the proper law to apply.  The Federal Circuit has ruled that Federal Circuit law, and not the law of the regional circuits, governs personal jurisdiction when patent issues are at stake.  *Nuance Commc'ns., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).  Patent issues are at stake in a case seeking declarations of noninfringement and invalidity.  *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348-49, 1351 (Fed. Cir. 2002) (holding Federal Circuit law governed the issue of personal jurisdiction in a declaratory judgment action for noninfringement and invalidity).  Thus, Federal Circuit law governs the personal jurisdiction analysis for plaintiff's noninfringement and invalidity claims.

Plaintiff also asserts nonpatent claims of false advertising and tortious interference against Ms. Shields.  "Where a suit involves both patent and non-patent claims, Federal Circuit law regarding due process also applies to the question of personal jurisdiction on non-patent claims if 'the resolution of the patent infringement issue will be a significant factor' in determining liability under the non-patent claims."  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361-62 (Fed. Cir. 2006) (quoting *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998)).  Here, resolving the noninfringement and invalidity issues will be a "significant factor" in determining Ms. Shields' liability for false advertising and tortious interference.  The false advertising claim is based on the November 20, 2013 e-mail in which Ms. Shields tried to convince one of plaintiff's suppliers to stop working with plaintiff because defendants owned "the only patent on the bags you supply [to plaintiff]."  (Doc. 1-5 at 2)  Plaintiff bases its tortious interference claim on an allegation that Ms. Shields "convinced a potential partner of Plaintiff to not work with Plaintiff to make and sell breast pumps until

8

Plaintiff is licensed under [the '498 Patent]." (Doc. 1 at ¶ 26) Because both claims are premised on allegations that Ms. Shields falsely claimed plaintiff's products were covered by the '498 Patent, resolving the declaratory claims will be a "significant factor" in determining defendants' liability on the nonpatent claims. For that reason, Federal Circuit law governs the personal jurisdiction analysis for all four of plaintiff's claims.

### B. Legal Standard

A plaintiff bears the burden to establish personal jurisdiction over a defendant. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). When a court considers a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). The Court must accept the uncontroverted allegations in the plaintiff's complaint as true. *Id.*

Plaintiff argues that the Court has specific jurisdiction over defendants for the claims asserted in this lawsuit. A district court may exercise specific jurisdiction over a defendant if the cause of action "arises out of" or "relates to" a defendant's in-state activity. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). In determining whether specific jurisdiction may be exercised over a non-consenting out-of-state defendant, a district court must determine whether the state long-arm statute permits service of process on the defendant and whether the exercise of personal jurisdiction satisfies due process requirements. *Breckenridge Pharm.*, 444 F.3d at 1361. The Kansas long-arm statute authorizes the exercise of jurisdiction to the full extent permitted by the Constitution. *In re Hesston Corp.*, 870 P.2d 17, 25 (Kan. 1994). As a result, the personal jurisdiction analysis collapses into the inquiry required by the Due Process Clause.

The Federal Circuit uses a three-pronged test to determine whether the exercise of personal jurisdiction over non-resident defendants satisfies due process. *Breckenridge Pharm.*, 444 F.3d at 1363. Under this test, the plaintiff must show: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Id.* While the plaintiff bears the burden of proof on the first two prongs, the burden is on the defendant on the last prong to "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable . . . .'" *Id.* (quoting *Burger King*, 471 U.S. at 476-77).

"[A] plaintiff also must secure personal jurisdiction over a defendant with respect to each claim [it] asserts." 4A Charles Alan Wright et al., *Federal Practice and Procedure* § 1069.7 (3d ed.). The Court's next two sections address plaintiff's four claims.

### C. The Court May Exercise Personal Jurisdiction Over Plaintiff's Declaratory Claims

The personal jurisdiction analysis for a declaratory judgment patent case differs from the analysis used in the ordinary patent infringement case. In a patent infringement suit, the patentee (patent owner) alleges that some act of making, using, offering to sell, or selling products or services by defendants constitutes an infringement of the patentee's patent. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). "In such litigation, the claim both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention." *Id.*

However, "in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the wrongful restraint by the patentee on the free exploitation of non-infringing goods such as the threat of an infringement suit." *Id.* (internal quotations omitted).

10

The nature of the claim in a declaratory judgment action is to "clear the air of infringement charges." *Id.* Thus, "[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Id.*; *Digital Ally, Inc. v. Util. Assocs., Inc.*, No. 13-2550-SAC, 2014 WL 1385156, at *4 (D. Kan. Apr. 9, 2014) ("[O]nly those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action.").

The Federal Circuit has held that, as a matter of policy, "warning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement." *Akro Corp. v. Luker*, 45 F.3d 1541, 1548 (Fed. Cir. 1995). Rather, "other activities" are required for a patentee to be subject to personal jurisdiction in the forum. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001). Thus, for the exercise of personal jurisdiction to comport with due process, there must be "other activities" "directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." *Avocent*, 552 F.3d at 1333 (internal quotations omitted).

Turning to the facts of this case, the Court concludes that the original License Agreement establishes personal jurisdiction. The License Agreement granted plaintiff a 20-year exclusive license to use defendants' '498 patent in exchange for quarterly royalty payments. The parties entered the Agreement under the belief that plaintiff's Penguin machines and Therma-Liner bags used the '498 Patent, and, from 2006 through 2012, plaintiff made royalty payments without incident. However, plaintiff stopped making payments in early 2013 when it determined that its

products were not covered by the '498 Patent. This sparked a dispute between plaintiff and defendants. Between January and May 2013, the parties engaged in a series of discussions about the disputed royalty payments, as well as other alleged breaches of the License Agreement. Finally, on May 23, 2013, defendants terminated the License Agreement.

The License Agreement satisfies the first prong of the personal jurisdiction test because it shows that defendants "purposefully directed" their activities at Kansas. Defendants negotiated and contracted with plaintiff, a Kansas company. The License Agreement provides that it was "made under . . . the laws of the State of Kansas" and "performable in part in Johnson County, Kansas," and "the parties mutually agree[d] that personal jurisdiction and venue shall be proper in the state and federal courts situated in Johnson County, Kansas." (Doc. 22-3 at 7)

However, defendants contend that the License Agreement cannot satisfy the second prong of the personal jurisdiction test—that the declaratory claims "arise from" or "relate to" the License Agreement—because the Agreement has been terminated. According to defendants, plaintiff's claims for noninfringement and invalidity cannot "arise from" or "relate to" a licensing agreement that was no longer in effect when plaintiff filed this lawsuit.

The Supreme Court has declined to address the exact contours of the "arise out of or related to" language of the specific jurisdiction analysis. *Avocent*, 552 F.3d at 1336; James William Moore et al., *Moore's Federal Practice* § 108.42 (3d ed.) ("Although the exercise of specific jurisdiction clearly depends on the existence of some nexus between the defendant's contacts and the controversy . . . it is not clear how strong this nexus must be."). Other regional circuit courts have adopted restrictive interpretations of this requirement. *E.g.*, *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005) ("[D]ue process demands something like a 'proximate cause' nexus."); *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (adopting a

"but for" test—"The question, therefore, is this:  but for Royal's contacts with the United States and California would Ballard's claims against the Bank have arisen?").  However, the Federal Circuit's "own interpretation of the 'arise out of or related to' language is far more permissive than either the 'proximate cause' or the 'but for' analyses." *Avocent*, 552 F.3d at 1337.  Indeed, the Federal Circuit has focused on the fact that "the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." *Inamed*, 249 F.3d at 1362.

Thus, plaintiff's noninfringement and invalidity claims need only "relate to" the License Agreement to satisfy the jurisdictional nexus.  The Court concludes that they do so here.  This dispute started when plaintiff determined that its products were not covered by plaintiff's '498 Patent and stopped making royalty payments.  The parties engaged in months of negotiations, marked by mutual allegations of breach, before defendants finally terminated the License Agreement.  Because defendants attempted to enforce the '498 Patent by trying to collect royalties due *under the License Agreement*, the Court concludes that plaintiff's claims for noninfringement and invalidity at least "relate to" the Agreement.  *Accord Compass Worldwide, Inc. v. Pinnacle Equip., Inc.*, 280 F. Supp. 2d 641, 646 (W.D. Ky. 2003) (holding that the plaintiff's infringement claim arose from "Pinnacle's decision to no longer comply with the terms of the license agreement," including refusing "to make further payments under the agreement.").

Defendants "purposefully directed" activity at Kansas by entering the License Agreement, and plaintiff's declaratory claims "relate to" it.  Thus, plaintiff has satisfied its burden on the first two prongs of the due process test for personal jurisdiction.  On the third prong, the burden shifts to defendants to "present a compelling case that the presence of some

13

other considerations would render jurisdiction unreasonable." *Breckenridge Pharm.*, 444 F.3d at 1363 (quoting *Burger King*, 471 U.S. at 476-77). Defendants make no argument that the exercise of jurisdiction here is unreasonable or unfair. The Court properly may exercise personal jurisdiction over defendants on plaintiff's declaratory judgment claims.

### D. The Court May Exercise Pendent Personal Jurisdiction Over Plaintiff's Nonpatent Claims

Plaintiff also asserts claims against Ms. Shields for false advertising and tortious interference. Because the Court must have personal jurisdiction over defendant for each claim alleged, plaintiff must prove jurisdiction for its nonpatent claims. 4A Charles Alan Wright et al., *Federal Practice and Procedure* § 1069.7 (3d ed.).

A court may exercise pendent personal jurisdiction over other claims in a lawsuit to the extent they form part of the "same case or controversy" as the patent claims. *Avocent*, 552 F.3d at 1339. Plaintiff alleges in its false advertising claim that Ms. Shields falsely told one of plaintiff's suppliers that defendants had "the only patent on the bags you supply [to plaintiff]," so the supplier would have to stop selling to plaintiff. (Doc. 1-5 at 2) For its tortious interference claim, plaintiff alleges that defendants convinced a potential partner not to work with plaintiff until plaintiff obtained another license to use the '498 Patent. Thus, the outcome of the declaratory claims—whether plaintiff infringes on the '498 Patent and whether it is valid— affects both nonpatent claims. For that reason, the Court concludes that plaintiff's false advertising and tortious interference claims form part of the "same case or controversy" as the patent claims, and the Court may exercise pendent personal jurisdiction over defendants on them. Because the Court may exercise personal jurisdiction over defendants on all four of plaintiff's claims, the Court denies defendants' motion to dismiss for lack of personal jurisdiction.

**IV. Failure to State a Claim**

Finally, defendants argue that all four of defendants' claims fail to state a claim upon which relief can be granted.  Because motions to dismiss under Fed. R. Civ. P. 12(b)(6) raise purely procedural issues, a district court should apply the law of the regional circuit in which the district court sits.  *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).  As a result, the Court evaluates plaintiff's claims under Tenth Circuit law.

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

**A.  Noninfringement Claim**

Count I of plaintiff's Complaint alleges that "Plaintiff has not and does not infringe [the '498 Patent] by any actions involving Plaintiff's PENGUIN® machines and/or its THERMA-LINER™ bags."  (Doc. 1 at ¶ 32)  Defendants argue that this "single conclusory statement" does not satisfy the *Iqbal* and *Twombly* pleading standard.  (Doc. 16 at 12-13)  The Court need not

reach that argument, because *Iqbal* and *Twombly* do not apply to a declaratory claim for noninfringement.

The Appendix of Forms to the Federal Rules of Civil Procedure contains samples of commonly used civil documents. Form 18 sets forth a sample complaint for a direct patent infringement claim with the following:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by making, selling, and using [the device]; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

Although the Court applies Tenth Circuit law to evaluate the sufficiency of plaintiff's claim, the Tenth Circuit has not ruled on whether Form 18 satisfies Rule 8. However, in *In re Bill of Lading*, the Federal Circuit held that "[a]s long as the complaint in question contains sufficient factual allegations to meet the requirements of Form 18, the complaint has sufficiently pled direct infringement." 681 F.3d at 1336. The Court finds *In re Bill of Lading* persuasive and follows it here.

To come to its conclusion, the Federal Circuit relied on Fed. R. Civ. P. 84, which states that "[t]he forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." *Id.* at 1334. "The language of Rule 84 and the Advisory Committee Notes make 'clear that a pleading, motion, or other paper that follows one of the Official forms cannot be successfully attacked.'" *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3162 (2d ed. 1997)). "Accordingly, to the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control." *Id.* Thus, whether a complaint adequately pleads infringement is measured by Form 18, not *Iqbal* and *Twombly*. *Id.*

16

The Court realizes that the Federal Circuit has applied Form 18 only to cases in which the patentee sues an alleged infringer for infringement.  However, the Court is persuaded that the pleading standards in Form 18 apply equally to claims or counterclaims seeking a declaration of noninfringement.  As another district court confronted with this issue wrote:  "It would make no sense to allow a plaintiff to assert a claim of infringement by pleading only what is required by Form 18, but then to require a defendant seeking a declaration of noninfringement to go beyond that and plead more detailed facts showing that it has not infringed the patent in suit."  *Gradient Enters., Inc. v. Skype Techs. S.A.*, 932 F. Supp. 2d 447, 451 (W.D.N.Y. 2013).  For this reason, the Court concludes that plaintiff need only comply with Form 18 when pleading a declaratory judgment claim for direct noninfringement.  *Accord PageMelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 3877686, at *2 (N.D. Cal. Sept. 6, 2012) ("Defendant's direct non-infringement allegations are sufficient if they have at least as much detail as Form 18."); *Wis. Tech. Venture Grp., LLC v. Fatwallet, Inc.*, No. 12-cv-326-bbc, 2012 WL 7861248, at *3 (W.D. Wis. Aug. 29, 2012) ("Although Form 18 applies to claims of direct infringement, I see no reason why the standard should not apply to defendant's noninfringement counterclaim.").

Here, plaintiff alleges that the Court has jurisdiction, that its Penguin machines and Therma-Liner bags do not infringe on the '498 Patent, and that it seeks a declaration of noninfringement.  Those allegations meet the relatively low bar of Form 18.  The Court therefore denies defendants' motion to dismiss plaintiff's noninfringement claim.

### B.  Invalidity Claim

Count II of plaintiff's Complaint alleges that the "['498 Patent] is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. §§ 102, 103, and/or for failure to comply with the provisions of 35 U.S.C. § 112."  (Doc. 1 at ¶ 35)  Defendants again argue that

plaintiff has failed to plead sufficient facts to satisfy *Iqbal* and *Twombly*. In response, plaintiff urges the Court to adopt the analysis of *Hon Hai Precision Indus. Co., Ltd. v. Wi-LAN, Inc.*, No. 12 Civ. 7900(SAS), 2013 WL 2322675, at *8 (S.D.N.Y. May 28, 2013).

*Hon Hai* held that a request to declare a patent invalid is really an affirmative defense to a potential infringement suit, not an independent claim, and that *Iqbal* and *Twombly* do not apply to affirmative defenses. *Id.* While there is a certain logic to *Hon Hai*'s conclusion, the Court declines to follow the non-binding *Hon Hai* opinion. Numerous district courts have addressed whether *Iqbal* and *Twombly* apply to a declaration for invalidity, both before and after *Hon Hai*, yet none have adopted the position that a declaratory claim for invalidity is properly analyzed as an affirmative defense.

However, the Court must still evaluate whether *Iqbal* and *Twombly* apply to plaintiff's invalidity claim. Some courts have held that Form 18 determines the pleading standard for invalidity claims as well as noninfringement claims, so *Iqbal* and *Twombly* do not apply. *See Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010) (holding that "the Court does not subject declaratory judgment claims of invalidity to the heightened pleading standards of *Twombly* and *Iqbal*."); *Palmetto Pharm. LLC v. AstraZeneca Pharm. LP*, No. 2:11-cv-807-SB-JDA, 2012 WL 6025756, at *6 (D.S.C. Nov. 6, 2012) (finding persuasive "the reasoning of the district courts that have found it would be 'incongruous to require heightened pleading' for invalidity counterclaims when the pleading standard for infringement does not require factual allegations to support the infringement claims.").

Other courts have held that because Form 18 by its terms applies only to infringement claims and no sample Form covers invalidity, *Iqbal* and *Twombly* apply to invalidity declarations. *EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956-GMS, 2014 WL 3809365, at *2 (D.

18

Del. July 31, 2014) (holding *Twombly* and *Iqbal* apply to invalidity declaratory judgment counterclaims); *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 Civ. 0538(PAE), 2013 WL 4016302, at *6 (S.D.N.Y. Aug. 7, 2013) ("This Court is ultimately not persuaded . . . that a bare assertion of invalidity meets the pleading requirements demanded by *Twombly* and *Iqbal*."); *Sliding Door Co. v. KLS Doors, LLC*, No. EDCV 13-196 JGB (DTBx), 2013 WL 2090298, at *4 (C.D. Cal. May 1, 2013) ("[T]his Court agrees with the district courts that require sufficient allegations to give fair notice to the other party" under *Iqbal* and *Twombly*.).

Our Court has previously held Form 18 does not apply to invalidity declarations, so a Court must scrutinize such claims under *Iqbal* and *Twombly*. In *Gemcor II, LLC v. Electroimpact Inc.*, Judge Murguia dismissed an invalidity counterclaim similar to plaintiff's claim here because it did not comply with *Iqbal* and *Twombly*'s heightened pleading standards. No. 11-CV-2520-CM, 2012 WL 628199, at *2 (D. Kan. Feb. 27, 2012). In deciding to apply *Iqbal* and *Twombly*, Judge Murguia concluded that "Form 18 applies to patent infringement claims. It is not an example complaint for a patent invalidity claim." *Id.* The Court sees no reason to depart from Judge Murguia's decision. Because no sample Form applies to invalidity claims, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Here, plaintiff merely alleges that the '498 patent "is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. §§ 102, 103 and/or for failure to comply with the provisions of 35 U.S.C. § 112." (Doc. 1 at ¶ 35) Plaintiff's claim amounts to a pure legal conclusion because it provides no facts explaining *why* the '498 Patent is invalid. Because plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," the Court dismisses plaintiff's invalidity claim. *Twombly*, 550 U.S. at 570. However, if plaintiff,

consistent with counsel's obligations under the Federal Rules of Civil Procedure, can make allegations that would repair these shortcomings, plaintiff may seek leave to file an amended pleading.

### C.  False Advertising

Count III of plaintiff's Complaint alleges a false advertising claim under 15 U.S.C. § 1125(a)(1)(B) against Ms. Shields in her individual capacity.  To make out a claim for false advertising under § 1125(a)(1)(B), a plaintiff must show:  (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake about (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injury to the plaintiff.  *Larkin Grp. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121, 1127 (D. Kan. 2004).

Plaintiff has alleged no facts to support the first element of its claim—that defendants made false or misleading representations of fact *in connection with commercial advertising or promotion of its product*.  For representations to constitute "commercial advertising or promotion" under § 1125(a)(1)(B), they must be:  (1) commercial speech; (2) by a defendant who engages in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.  *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273 (10th Cir. 2000).  "While the representation need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."  *Id.* at 1273-74.

20

Plaintiff alleges just two communications that could conceivably be viewed as "commercial advertising or promotion of its product." First, plaintiff argues that Ms. Shields' November 20, 2013 e-mail to one of plaintiff's suppliers constitutes "commercial advertising or promotion." In that e-mail, plaintiff wrote, "I have the only patent on the bags you supply" and "all suppliers will have to stop selling to [plaintiff] until the case is a[d]judicated." (Doc. 1-5 at 2) This e-mail threatens only plaintiff's relationship with one of its suppliers, and makes no allegation that it reached any of the customers for plaintiff's Penguin machines or Therma-Liner bags. Thus, the e-mail attempted to influence only suppliers (not consumers) of plaintiff's products and was not "disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion." *Proctor & Gamble Co.*, 222 F.3d at 1273-74.

Second, plaintiff alleges that it "has also sustained damages, in the form of lost business from a potential partner that Ms. Shields has convinced not to work with [plaintiff] until it obtains a license under the '498 Patent." (Doc. 22-1 at 30) Again, plaintiff makes no allegations that this vaguely-described communication reached any members of the purchasing public, and thus it cannot satisfy the first element of a claim under § 1125(a)(1)(B). Because plaintiff has not pleaded sufficient facts to satisfy the first element of its false advertising claim, the Court dismisses plaintiff's false advertising claim. *Twombly*, 550 U.S. at 570. Again, if plaintiff properly can allege this claim in a fashion that complies with *Iqbal* and *Twombly*, plaintiff may seek leave to amend its Complaint and reassert this claim.

### D. Tortious Interference

Count IV of plaintiff's Complaint alleges a claim of tortious interference with plaintiff's existing and prospective business relationships. In its response to defendants' motion to dismiss, plaintiff alleges that Ms. Shields tortiously interfered by: (1) sending the November 20, 2013 e-

mail in which she tried to convince one of plaintiff's suppliers to stop supplying plaintiff;
(2) attemting to file a "specious trademark application with, upon information and belief,
knowledge of Creche's existing trademark" (Doc. 22-1 at 31); and (3) convincing "a potential
partner of Plaintiff to not work with Plaintiff to make and sell breast pumps until Plaintiff is
licensed under [the '498 Patent]" (Doc. 1 at ¶ 26). Plaintiff does not allege that any of Ms.
Shields' actions affected an existing contract. Therefore, the Court will construe each of these
allegations as ones designed to assert a claim for tortious interference with a business
relationship.

To succeed on a claim for tortious interference with a business relationship, a plaintiff
must prove: (1) the existence of a business relationship or expectancy with the probability of
future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the
defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to
have continued the relationship or realized the expectancy; (4) intentional misconduct by
defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's
misconduct. *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986).

Plaintiff's first allegation on this claim is that, in a November 20, 2013 e-mail, Ms.
Shields tried to convince plaintiff's supplier to stop working with plaintiff. However, plaintiff
never alleges that the supplier actually stopped supplying products to plaintiff or that Ms.
Shields' e-mail damaged plaintiff. As a result, the November 20, 2013 e-mail does not state a
claim for tortious interference.

Plaintiff's second allegation asserts that Ms. Shields filed a "specious trademark
application." (Doc. 22-1 at 31) But, plaintiff makes no allegation that this conduct affected any

prospective or existing business relationship, or how it damaged plaintiff. Thus, Ms. Shields' trademark application does not state a claim for tortious interference.

Finally, plaintiff alleges that Ms. Shields "convinced a potential partner of Plaintiff to not work with Plaintiff to make and sell breast pumps until Plaintiff is licensed under [the '498 Patent]." (Doc. 1 at ¶ 26) This allegation fails to state a claim because plaintiff has not alleged the existence of a business expectancy. The first element of a claim for tortious interference with business expectancy requires an allegation of "the existence of a business relationship or expectancy with the *probability* of future economic benefit to the plaintiff." *Turner*, 722 P.2d at 1115 (emphasis added). Here, plaintiff merely states that Ms. Shields has "convinced a *potential* partner of Plaintiff to not work with plaintiff . . . ." (Doc. 1 at ¶ 26) (emphasis added). The word "probable" in the elements for tortious interference requires a higher degree of certainty about the alleged future partner than "potential." Because plaintiff pleads only that Ms. Shields' conduct caused it to lose a *potential* (not probable) partner, plaintiff has failed to state a plausible claim for relief.

Thus, none of plaintiff's three allegations state a claim for relief, and the Court dismisses plaintiff's tortious interference claim. Again, if plaintiff properly can allege this claim in a fashion that complies with *Iqbal* and *Twombly*, plaintiff may seek leave to amend its Complaint and reassert this claim.

## V. Conclusion

The Court denies defendants' motion to dismiss in part and grants it in part. Specifically, the Court:

> (1) denies defendants' motion to dismiss plaintiff's declaratory judgment claims for lack of an "actual controversy";

> (2) denies defendants' motion to dismiss for lack of personal jurisdiction;

23

(3) denies defendants' motion to dismiss plaintiff's noninfringement claim for failure to state a claim on which relief can be granted; and

(4) grants defendants' motion to dismiss plaintiff's invalidity, false advertising, and tortious interference claims, subject to plaintiff's right to seek leave to reassert these claims with properly pleaded allegations.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the defendants' Motion to Dismiss (Doc. 15) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 26th day of November, 2014, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**