IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NEONATAL PRODUCT GROUP, INC.,

    Plaintiff/Counterclaim
    Defendant,

v.

JANICE M. SHIELDS,
PAUL W. SHIELDS, and ANGELE
INNOVATIONS, LLC,

    Defendants/Counterclaimants,

v.

CRECHE INNOVATIONS, LLC,
MILLENNIUM MARKETING
GROUP, LTD., and
SCOTT A. NORMAN,

    Counterclaim Defendants.

Case No. 13-2601-DDC-KGS

## MEMORANDUM AND ORDER

    Defendants and Counterclaimants Janice M. Shields and Paul W. Shields, individually and as trustees of the Shields Family Trust, and Angele Innovations, LLC (collectively, "the Shields Defendants") have filed a Motion for Leave to File a Second Amended Answer and Counterclaims to Add Party (Doc. 138). The Shields Defendants seek to add another party—Ameda, Inc.—as a counterclaim defendant in this lawsuit. For the reasons explained below, the court grants the Shields Defendants' motion and orders them to file their Second Amended Answer and Counterclaims within 10 days of the date of this Memorandum and Order.

I. **Factual Background**

On November 25, 2013, plaintiff Neonatal Product Group, Inc. ("Neonatal"), doing business as Creche Innovations, LLC ("Creche") filed this lawsuit against the Shields Defendants seeking a declaratory judgment that it has not infringed U.S. Patent No. 6,417,498 ("the '498 Patent") and that the Asserted Claims of the '498 Patent are invalid. The device disclosed in the '498 Patent is called the "Neonatal Substrate Warmer." The device automatically warms and vibrates baby bottles containing frozen or refrigerated breast milk so that the breast milk thaws, warms, and mixes quickly and efficiently. Defendants Janice M. Shields and Paul W. Shields invented the Neonatal Substrate Warmer and procured the '498 Patent. Defendant Angele Innovations, LLC currently owns the '498 Patent.

The Shields Defendants responded to the lawsuit by filing an Answer and Counterclaim (Doc. 30). The Shields Defendants later filed an Amended Answer and Counterclaim (Doc. 58), which is the current operative pleading. It asserts eight counterclaims, including a claim for patent infringement, against four counterclaim defendants: Neonatal, Creche, Millennium Marketing Group, Ltd., and Scott Norman (collectively, "the Counterclaim Defendants"). The Shields Defendants now seek leave to add a fifth counterclaim defendant to the lawsuit.

The Shields Defendants assert that they just recently discovered that Neonatal has transferred the allegedly infringing product line to a third party—Ameda, Inc. ("Ameda"). The Shields Defendants contend that they first learned this information on December 5, 2016—more than three years into the litigation and only nine days before the Final Pretrial Conference. The Shields Defendants explain that Ms. Shields "stumbled upon" a press release announcing that Ameda bought the allegedly infringing product line sometime before October 31, 2016. *See* Doc. 138-3 (press release titled "Ameda Acquires Penguin from Creche to Expand NICU

Portfolio"). The Shields Defendants now seek leave to file a Second Amended Answer and Counterclaim to add Ameda as a counterclaim defendant.

## II.     Legal Standard Governing Motions for Leave to Amend

Fed. R. Civ. P. 15 governs the amendment of pleadings. Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend the pleadings] when justice so requires." But the court may deny leave to amend on the grounds of undue delay, bad faith or dilatory motive by the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the proposed amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As the Supreme Court has explained, "[i]t is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (citing *Foman*, 371 U.S. at 182).

## III.    Analysis

The Shields Defendants assert that the court should grant them leave to file their Second Amended Answer and Counterclaims to add Ameda as a party under Rule 15. The Shields Defendants argue that none of the reasons for denying leave to amend exist here. They argue that they have not engaged in undue delay, bad faith, or any dilatory motive. They contend that allowing the amendment will not prejudice the Counterclaim Defendants. And, they argue that the proposed amendment does not seek to cure deficiencies of other amendments and are not futile. So, the Shields Defendants contend, the court freely should grant them leave to file their amended pleading.

The Counterclaim Defendants respond that the Shields Defendants first must satisfy the good-cause standard under Fed. R. Civ. P. 16 to obtain the relief they seek, but also concede that

3

they can clear this hurdle. The Counterclaim Defendants argue that Rule 16 applies because the request for leave to amend comes after the deadline for filing motions for leave established by the court's Scheduling Order. *See* Doc. 40 at 7 (requiring the parties to file any motion for leave to join additional parties or to otherwise amend the pleadings by March 20, 2015). The good-cause standard requires the moving party to show "that the deadline 'could not have been met with diligence.'" *Simpson v. Home Depot, Inc.*, 203 F.R.D. 643, 644 (D. Kan. 2001) (quoting *Denmon v. Runyon*, 151 F.R.D. 404, 407 (D. Kan. 1993)). Here, the Shields Defendants could not have moved to amend the pleadings to add Ameda before the March 20, 2015 deadline because Neonatal did not sell the allegedly infringing product line until October 2016. So, the Shields Defendants can establish good cause.

The Counterclaim Defendants next assert that the Shields Defendants cannot satisfy the Rule 15(a) standard for granting leave to amend for two reasons. First, the Counterclaim Defendants argue that the proposed amendment is unnecessary. Second, the Counterclaim Defendants contend that the proposed amendment needlessly delays resolution of this lawsuit. The court rejects both arguments as a reason to deny the motion.

The Counterclaim Defendants argue that Ameda is not a necessary party because, if the Shields Defendants obtain the injunctive relief they seek in this lawsuit, the injunction also would bind Ameda. They contend that, under Fed. R. Civ. P. 65(d)(2)(C), an injunction binds not only the parties to the litigation but also "other persons who are in active concert or participation" with the parties or the parties' officers, agents, servants, employees, and attorneys. The Counterclaim Defendants thus argue that Ameda would be bound by any injunction issued in this lawsuit because they are acting in concert with the Counterclaim Defendants.

4

The Shields Defendants disagree. As they explain, they seek a permanent injunction against the Counterclaim Defendants from selling the allegedly infringing products. The Shields Defendants argue that Neonatal's sale of the product line to Ameda effectively has rendered their request for a permanent injunction moot. And, they contend that they cannot obtain injunctive relief against Ameda unless it is added as a party to the litigation. They reject the Counterclaim Defendants' argument about the binding effect of Fed. R. Civ. P. 65(d)(2)(C) on Ameda because it is based on multiple assumptions, not established facts. The court agrees.

Right now, the Shields Defendants lack the information necessary to discern if the Counterclaim Defendants and Ameda are in active concert or participation such that Ameda would be bound by a permanent injunction in this lawsuit. The Shields Defendants also cannot predict what relationship between the Counterclaim Defendants and Ameda will exist in the future. As the Shields Defendants suggest, Ameda could distance itself from the Counterclaim Defendants so that it is not acting in concert with them and thus not bound by any injunction. Yet, Ameda still could sell the allegedly infringing product line, as it is apparently doing now. Thus, on the current record, the court cannot conclude that Ameda is not a necessary party to this litigation. And, this argument provides no reason to deny the motion for leave to amend.

The Counterclaim Defendants also cannot show that they will sustain undue prejudice if the court grants the Shields Defendants leave to file their proposed amended pleading. The Counterclaim Defendants argue that it is prejudicial to add another party at this late date in the ligation—more than three years after the case was filed, after discovery has closed, and after the parties have briefed the pending motion for partial summary judgment. The court recognizes that adding another party will delay the case, but it is just a slight delay and will not impose undue prejudice here. This is especially true when the actions of the Counterclaim Defendants

have required the Shields Defendants to seek leave to amend. The allegedly infringing product has been the subject of this litigation for more than three years. And, at the final stages of the case, one of the Counterclaim Defendants—Neonatal—chose to sell the product line to a third party. The Counterclaim Defendants cannot complain about prejudice under these facts.

The court also recognizes that denying the Shields Defendants leave to file an amended pleading may prejudice them. After litigating this patent infringement case for more than three years, they rightfully are concerned about their ability to obtain complete relief after learning only recently that another company—not a party to the case—now is selling the allegedly infringing product line after purchasing it from Neonatal. If the Shields Defendants cannot obtain the relief they seek in this case, they may be forced to file another lawsuit against Ameda over the same product that has been the subject of this multi-year litigation. Under that scenario, the Shields Defendants would endure undue prejudice, not the Counterclaim Defendants.

The court also finds that the other factors that the court should consider on a Rule 15 motion favor granting leave to amend. First, the Shields Defendants have not engaged in undue delay. They assert that they first learned of the Ameda purchase on December 5, 2016, raised it with the court during the Final Pretrial Conference on December 16, 2016, and moved for leave to amend on December 21, 2016. The Counterclaim Defendants do not dispute this timeline. No undue delay occurred here. Second, the Shields Defendants have not acted in bad faith or with any dilatory motive. Third, the proposed amendment does not seek to cure the deficiencies of other amendments. Instead, the proposed amendment seeks to add a party and facts about that party's recent purchase of the allegedly infringing product line. Finally, the proposed amendment is not futile.

The court thus concludes that the interests of justice warrant the Shields Defendants' proposed amendment to add Ameda as a counterclaim defendant. The court also finds that the Shields Defendants are entitled to an extension of discovery so that they can discover facts that are relevant to their claim that Ameda has infringed the '498 Patent. The court refers the case to Judge Sebelius for scheduling of the new case management deadlines and trial setting.

IV. **Conclusion**

The court exercises its discretion under the liberal standard for granting leave to amend pleadings. For reasons discussed above, the court concludes that the interests of justice warrant the filing of the proposed amended pleading. The court thus grants the Shields Defendants' Motion for Leave to File a Second Amended Answer and Counterclaims to Add Party.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendants and Counterclaimants' Motion for Leave of Court to File Second Amended Answer and Counterclaims to Add Party (Doc. 138) is granted. Defendants and Counterclaimants must file their Second Amended Answer and Counterclaims within 10 days of the date of this Order.

**IT IS FURTHER ORDERED THAT** the case is referred to Magistrate Judge K. Gary Sebelius for scheduling and supervision of additional discovery.

**IT IS SO ORDERED.**

**Dated this 17th day of March, 2017, at Topeka, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**